# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

TIMOTHY JON PARROTT,

    Plaintiff,

v.                                              Civil No. 05-CV-10075-BC

COMMISSIONER OF                  DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                   MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, and that the FINDINGS OF THE COMMISSIONER BE AFFIRMED.

**II.  REPORT**

    **A.  Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

insurance benefits. This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 46 years of age at the time of the most recent administrative hearing and has completed a high school education and two years of mechanics schooling. (Tr. at 135.) Plaintiff's relevant work history included work as a laborer, shipping clerk, parts' manager, and car wash manager. (Tr. at 46.)

Plaintiff filed the instant claim on August 7, 2002, alleging that he became unable to work on March 20, 2001. (Tr. at 39-41.) The claim was denied at the initial stage. (Tr. at 22.) In denying Plaintiff's claim, the Defendant Commissioner considered hypertensive cardiovascular disease and cardiomyopathies[1] as possible bases of disability. (*Id.*)

On March 3, 2004, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Melvyn Kalt, who considered the case *de novo*. In a decision dated July 28, 2004, the ALJ found that Plaintiff was not disabled. (Tr. at 9-16.) Plaintiff requested a review of this decision on September 27, 2004. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner on January 8, 2005, when the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6.) On March 18, 2005, Plaintiff filed the instant suit *pro se* seeking judicial review of the Commissioner's unfavorable decision.

---

[1] Cardiomyopathy is defined as "a disease of the myocardium, the muscular wall of the heart, which is of a noninflammatory nature (involves no inflammation)." 1 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE C-82.

**B.    Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam).  The Commissioner is charged with finding the facts relevant to an application for disability benefits.  A federal court "may not try the case de novo, . . . ."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).  The scope of the court's review is limited to an examination of the record only.  *Brainard,* 889 F.2d at 681.  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)).  The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'"  *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C.     Governing Law**

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th

Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

### D.     Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that on June 10, 2002, Plaintiff reported to the emergency room of CarePlus with complaints of swelling during the previous two weeks. He stated that he became ill about a month previous after being stung by a bee. He had flu-like symptoms with hot flashes, low-grade temperature, fatigue, weakness and shortness of breath on exertion. Plaintiff stated that he was a non-smoker but had used marijuana heavily until about two weeks previous. (Tr. at 82.) Plaintiff was observed in the emergency room, and a chest x-ray showed an enlarged heart suggestive of early congestive heart failure. Plaintiff was placed on a cardiac monitor, given medications, and transferred to Henry Ford Hospital for admission. (Tr. at 83.) An echocardiogram showed that the chambers of the heart were enlarged, the cardiac valves were essentially normal, but the left ventricle function was "moderately to severely decreased" as measured by an ejection fraction of 20%. (Tr. at 87.) Plaintiff was given medications and discharged the following day with instructions to follow up with Dr. Nelson at Internal Medicine Clinic on June 14, 2002, and to make an appointment with the Heart Failure Clinic. (Tr. at 80.)

Plaintiff was seen by Dr. Leslie Nelson on June 14, 2002. Physical examination revealed blood pressure of 140/90, regular heart rate and rhythm with no murmurs, and no edema at this

time.  Dr. Nelson's assessment was that of dilated cardiomyopathy, congestive heart failure and mild, chronic renal insufficiency.  Medications were adjusted, and Plaintiff was instructed to return in three months.  (Tr. at 89.)

A cardiology report dated October 24, 2002, showed left heart enlargement with mild global systolic impairment and an estimated ejection fraction of 45% to 50%.  The left chambers of the heart were described as mildly dilated, and the right chambers were "at the upper limits of normal." Plaintiff's cardiac valves were normal, but Plaintiff exhibited a mild mitral valve insufficiency, conditions which the reviewing physician characterized as "normal for patient's age."  (Tr. at 99.)

At the request of the Disability Determination Service, Plaintiff was seen on March 20, 2004, by Dr. E. Montasir, M.D.  (Tr. at 117.)  Examination revealed a "well-developed and well-nourished male, who is obese and in no acute distress."  (Tr. at 118.)  Plaintiff's chest expansion was bilaterally equal, with no rales, rhonchi, wheezing or cough.  (*Id.*)  Plaintiff had normal sinus rhythm.  (Tr. at 119.)  Dr. Montasir reported that Plaintiff had hypertension which was not well controlled due to lack of medications.  There was no evidence of congestive heart failure at that time and no peripheral edema.  The doctor did note left atrial enlargement, but otherwise no ischemic changes to the heart.  The doctor found Plaintiff's gait and stance, as well as the curvature of Plaintiff's spine, to be unremarkable.  All joints were found to have full range of motion, and Plaintiff was able to walk on heels and toes.  Plaintiff could bend forward the normal 90 degrees, but Plaintiff's ability to squat was diminished.  The doctor reported that sensory functions were intact and that motor examination revealed "fair muscle tone[.]"  (*Id.*)  In a statement of ability to do work-related activities completed by Dr. Montasir, the doctor stated that Plaintiff could lift up to 20 pounds.  (Tr. at 121.)  The doctor felt that Plaintiff's ability to stand, walk and sit were unaffected by Plaintiff's impairments.  (Tr. at 121-22.)  The doctor felt that Plaintiff's ability to

push and pull were limited. (Tr. at 122.) The doctor noted that Plaintiff could occasionally climb and crouch, and could frequently balance, kneel, crawl and stoop. (*Id*.) He felt that Plaintiff's ability to reach and manipulate were unlimited, as was his ability to see, hear and speak. (Tr. at 123.)

Plaintiff was admitted to Henry Ford Hospital Emergency Room on April 20, 2004, with congestive heart failure and hypertension. (Tr. at 127.) Plaintiff had not been taking his medication over the past year due to lack of insurance and prescription coverage. His blood pressure was 189/129 upon admission. Plaintiff was started on lasix, beta-blockers and blood pressure medication. He did well and was stable for discharge two days later. (Tr. at 127.)

At the administrative hearing, a vocational expert (VE) testified. The VE described Plaintiff's prior work as a shipping clerk to be semi-skilled and heavy, his work as a parts and shipping clerk to be skilled and medium in exertion, and his work as a car wash manager to be semi-skilled and heavy in exertion. (Tr. at 149.) The VE then opined that "[b]ased on the [Plaintiff's] described exertional limitations, he would be limited, I believe, to sedentary occupations." (*Id*.) The VE then identified approximately 5,000 bench, packaging, assembly and inspection jobs in the regional area consistent with Plaintiff's described exertional limitations. (*Id*.)

**E.    ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since December 20, 2001. (Tr. at 15.) At step two, the ALJ found that Plaintiff's history of congestive heart failure, mild chronic renal insufficiency, cardiomyopathy, uncontrolled hypertension, and complaints of shortness of breath upon exertion were "severe" within the meaning of the second sequential step.

8

(*Id.*)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (*Id.*)  At step four, the ALJ found that Plaintiff could not perform his previous work.  (*Id.*)  At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy, such as entry-level sorting, packaging and visual inspection.  (*Id.*)

  **F.**  **Analysis and Conclusions**

  **1.**  **Legal Standards**

  The ALJ determined that Plaintiff possessed the residual functional capacity to return to unskilled sedentary work.  (Tr. at 15.)

> Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a) (1991).  Social Security Ruling (SSR) 83-10 clarifies this definition and provides that:

> "Occasionally" means occurring from very little up to one-third of the time.  Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.  Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

  After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

9

**2.     Substantial Evidence**

Plaintiff seeks a reversal of the findings made by the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, I suggest that substantial evidence supports the findings of the ALJ. Although Plaintiff's medical condition clearly impacts his physical capacities, an echocardiogram taken in November 2002 indicated an ejection fraction of between 45 and 50% which both the reviewing physician and Dr. Montasir described as close to normalcy. (Tr. at 99, 117.) Although Plaintiff was hospitalized on more than one occasion, he was each time released in stable and improved condition after receiving medications. I further suggest that the ALJ's residual functional capacity assessment is consistent with the objective medical findings reported by Dr. Nelson, and the assessments made by Dr. Montasir (Tr. at 122-24), which in turn are consistent with the Commissioner's definition of sedentary work.

The ALJ's findings also follow the opinions of the vocational expert which were based upon the exertional limitations described by the Plaintiff himself during the administrative hearing coming in response to questions from both the ALJ and his own attorney. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). I therefore suggest that Plaintiff has failed to meet his burden of proving disability.

Plaintiff asserts his belief that he is entitled to appointed counsel to represent him in this proceeding. However, the Constitution does not grant "the right to effective assistance of counsel in social security cases." *Banta v. Chater*, No. CIV-94-1754-A, 1995 WL 864573, at *1-*3 (W.D.Okla. Dec.1, 1995), *aff'd*, 94 F.3d 655 (10th Cir.1996) ("There is no constitutional or statutory right to competent counsel in Social Security proceedings."); *see also Janvier v. United States*, 793 F.2d 449, 451 (2d Cir.1986) (acknowledging that the Sixth Amendment right to counsel attaches only to criminal proceedings). I also suggest that Plaintiff's assertion that Dr. Montasir is unqualified lacks merit. The doctor's examination appears to be at least as thorough and consistent with the examination given disability claimants by doctors engaged by the Disability Determination Service reviewed in other cases by this Magistrate Judge.

Plaintiff also attaches to his filing exhibits not part of the administrative record, which he presumably requests the court to consider. Although sentence six of 42 U.S.C. § 405(g) authorizes the court to remand a case for additional administrative action to consider new evidence, before such a remand can be ordered, the new evidence must be material, and good cause must be shown for the failure to submit the new evidence during the administrative proceedings. The party seeking the remand has the burden of proving both the materiality of the new evidence and a valid reason for the failure to obtain the evidence prior to the administrative hearing. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir.1984); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). In order for the claimant to satisfy this burden of proof as to materiality, he or she must also demonstrate that there was a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence. *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir.1980). Plaintiff, I suggest, has failed to meet these requirements.

Accordingly, after review of the record, I conclude that the decision of ALJ Kalt, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

    s/ *Charles E Binder*
    CHARLES E. BINDER
Dated: October 21, 2005    United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet L. Parker, and served in the traditional manner on Timothy Jon Parrott and Honorable David M. Lawson.


Dated: October 21, 2005                By      s/Mary E. Dobbick
                                       Secretary to Magistrate Judge Binder